Hope Developers, Inc.; Cullman Octa Structure Homes, Inc.; and Goodlett Corporation (hereinafter referred to as "the corporations") appeal from a judgment rendered in favor of Dwy Nal Nixon Vandiver, Jessie G. Nixon, and Barbara Ann Farley.
This is the second time these parties have been before this Court. In Hope Developers, Inc. v. Vandiver, 582 So.2d 1073
(Ala. 1991), *Page 911 
this Court reversed the trial court's judgment, wherein the trial court had dismissed, on res judicata grounds, the corporations' claims seeking to have a foreclosure deed set aside and seeking to have a conveyance set aside. Our opinion summarized the facts:[1]
 "In 1980, Jessie G. Nixon deeded 40 acres to her son, Arthur T. Nixon, and his wife, Dwy Nal Nixon. As a result of their divorce in 1982, Arthur T. Nixon conveyed the property to Dwy Nal Nixon. In 1983, Dwy Nal Nixon entered into [an agreement] with Hope Developers, Inc., for the development of 39 acres of the property; pursuant to that agreement, she conveyed 39 acres to Hope Developers and [took] a note and a mortgage on the 39 acres from Hope Developers. . . . Dwy Nal Nixon retained one acre as her residence. Later in 1983, the United States Government attached the entire 40 acres and instituted proceedings to seize the property based on allegations that Arthur T. Nixon had engaged in trafficking in controlled substances.
 "In June 1985 the one-acre parcel was released from the attachment, and in July of that year Dwy Nal Nixon conveyed that parcel to Jessie G. Nixon and Barbara Ann Farley, who is Jessie G. Nixon's daughter. During the pendency of the attachment, Hope Developers apparently stopped making installment payments on the note secured by its mortgage to Dwy Nal Nixon, and in November 1985 she instituted foreclosure proceedings. She received a foreclosure deed on December 9, 1985, and she then deeded the 39 acres to Jessie G. Nixon on January 3, 1986. On January 7, 1986, Jessie G. Nixon deeded the 39 acres to herself and Barbara Ann Farley as joint tenants with right of survivorship. The equitable claims in both actions [those two actions described in the following paragraphs] sought rescission of these three deeds.
 "Based on these facts, Hope Developers filed an action ('the first action') in February 1986 against Dwy Nal Nixon claiming damages in seven counts for breach of the covenants in the deed conveying the 39 acres to it, fraud, 'wrongful ejectment,' forcible entry, trespass, conversion, and breach of contract. Count two of the complaint sought to set aside the foreclosure deed, and count nine sought to have the foreclosure deed and the January 3 and January 7 deeds set aside. Jessie G. Nixon and Barbara Ann Farley were added as defendants in February 1987, but were dismissed [by consent of the parties] in June 1987. . . . Thus, only Dwy Nal Nixon remained as a defendant.
 "The first action went to trial in August 1988. The seven counts for damages were submitted to the jury, which returned itemized verdicts on the various counts, totaling $112,000. The court reserved judgment on count two. . . .*
[Subsequently, count two was dismissed 'without prejudice.']
 "On April 21, 1989, the corporations filed this action ('the second action'), seeking to have the foreclosure deed set aside (i.e., the relief previously sought in count two of the first action), and seeking to have the January 3 and January 7 conveyances to Jessie G. Nixon and Barbara Ann Farley set aside (i.e., the relief sought in count nine of the first action). Dwy Nal Nixon Vandiver,** Jessie G. Nixon, and Barbara Ann Farley filed a motion for the second action to be dismissed. The court granted that motion and dismissed the action, holding that the second action was barred by res judicata.
582 So.2d at 1074-75.
On remand, the trial court, sitting without a jury, rendered a judgment in favor of Vandiver, Nixon, and Farley and against the *Page 912 
corporations on their claims seeking to set aside the foreclosure deed and seeking to have the conveyance of 39 acres from Vandiver to Nixon set aside and to have the conveyance from Nixon to Farley and Nixon jointly set aside. The corporations appeal.[2]
The corporations contend that Vandiver's foreclosure deed of December 9, 1985, is void, as a matter of law, because, they argue, exclusive title was, at that time, vested in the United States. Therefore, the corporations assert that the January 3, 1986, conveyance to Nixon is also void because, they say, Vandiver had no title to pass.
It is undisputed that on November 25, 1983, the Government filed a complaint in rem by which it sought forfeiture of the property on the basis that the property had been purchased with proceeds traceable to an unlawful exchange for a controlled substance. On November 28, 1983, the Government seized the property, basing the seizure, as well as the forfeiture action, on 21 U.S.C. § 881(a)(6), which provides for forfeiture of:
 "All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."
The corporations base their argument on § 881(h), which states, "All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." The corporations contend that the only possible interpretation of § 881(h) is that, until the Government voluntarily relinquished its rights and dismissed its judicial seizure action, the Government held title to the 39 acres and no one could alter the Government's ownership interest.
It is manifest that the statutory provision of § 881(h) cannot serve to transfer ownership of the property until there is a final judgment of forfeiture. In United States v. A Parcelof Land, etc. known as 92 Buena Vista Ave., 507 U.S. 111,113 S.Ct. 1126, 122 L.Ed.2d 469 (1993), the Government argued that an individual was not entitled to raise the "innocent owner" defense in a forfeiture proceeding because that individual had purchased the property with proceeds from an illegal narcotics transaction (the proceeds having been received from a third party) and § 881(h), the Government contended, vested ownership of the property in the Government at the moment the proceeds were used to pay the purchase price. The United States Supreme Court rejected that argument, comparing the common law rule of relation-back to its statutory equivalent: "The common-law rule had always allowed owners to invoke defenses made available to them before the Government's title vested. . . ." 507 U.S. at ___, 113 S.Ct. at 1137 (emphasis added).
The 92 Buena Vista case compels the conclusion that not every right of the owner is lost by virtue of the relation-back of title. Among the rights that survive here are the rights of Vandiver and the corporations to pursue their legal rights between themselves while the Government had the property under seizure. If the corporations had desired that title to the 39 acres be returned to them when, and if, the Government released it from seizure, then the corporations should have fulfilled the terms and obligations of the note and mortgage or should have sought injunctive relief when the foreclosure proceeding was instituted.
Next, the corporations argue that Vandiver's December 1985 foreclosure of the 39 acres is void, because, they argue, the mortgage to Vandiver was not in default because title to the property was held by the United States. We disagree. The fictional *Page 913 
and retroactive vesting of title is not self-executing, but rather occurs only when the Government wins a judgment of forfeiture. 92 Buena Vista. Until a final judgment of forfeiture, someone else owns the property and may invoke any available defense. 92 Buena Vista.
In the alternative, the corporations contend that the January 3, 1986, deed of the 39 acres from Vandiver to Nixon was a fraudulent conveyance as to the creditors of Vandiver and, therefore, is void.
"Where ore tenus evidence is presented to the trial court, a presumption of correctness exists as to the court's findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." Odom v. Hull, 658 So.2d 442, 444
(Ala. 1995).
In Granberry v. Johnson, 491 So.2d 926 (Ala. 1986), this Court noted the law on fraudulent conveyances expressed in Ala. Code 1975, § 8-9-6 (now repealed), which provided, in pertinent part, that "[a]ll conveyances . . . in writing, or otherwise, of any estate or interest in real or personal property . . . made with intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful actions, damages, forfeitures, debts or demands . . . are void."[3] Therefore, under § 8-9-6, three elements were necessary before a conveyance could be declared fraudulent: "(1) that the creditor was defrauded; (2) that the debtor intended to defraud; and (3) that the conveyance was of property out of which the creditor could have realized his or her claim or some portion of it."Granberry, 491 So.2d at 928, citing Roddam v. Martin, 285 Ala. 619, 235 So.2d 654 (1970). As this Court noted in Granberry, 491 So.2d at 928, citing Roddam, 285 Ala. at 622,235 So.2d at 656, "[t]he debtor-creditor relationship is created not by a judgment, but by the wrong which produces the injury; and it is the date of the wrongful act, not the date of the filing of the suit or of the judgment, which fixes the status and rights of the parties."
In Granberry, this Court, citing Smith v. Wilder, 270 Ala. 637, 120 So.2d 871 (1960), overruled on other grounds, J.C.Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala. 1981), stated:
 "An existing creditor seeking to set aside a conveyance may do so because of either actual fraud or constructive fraud. Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor. On the other hand, constructive fraud is based on facts and circumstances which courts have said constitute legal fraud, regardless of actual intent. The term 'constructive fraud' is generally used to refer to those instances where a grantor, indebted at the time, conveys property without receiving valuable consideration.
 "The Smith Court further stated that where one seeks to set aside a conveyance because of constructive fraud, the complainant bears the burden of showing that his or her debt antedated the conveyance. When such proof is made, the burden shifts to the grantee to show that (1) the grantor owed a debt to the grantee; (2) the consideration for the conveyance was the extinguishment of the existing debt; and (3) the value of the property conveyed was no more than a fair equivalent for the debt amount. Conveyances of property between family members in the face of a pending suit against the grantor must undergo especially careful scrutiny."
491 So.2d at 928-29 (citations omitted).
The trial court made the following findings of fact:
 "The Court finds no actual or constructive fraud on the part of the defendants, the only person who ever paid for the 39 acres of parcel in question in full was Mrs. Jessie G. Nixon. She was never paid anything for the transfer from herself to her son, Tommy Nixon, and Mrs. Dwy Nal Nixon, now Mrs. Dwy Nal Nixon Vandiver. She was partially paid for an additional *Page 914 
one acre tract. The transfer from Mrs. Vandiver to Mrs. Nixon [after the Government released the property] was simply one where Mrs. Vandiver returned the property to Mrs. Jessie G. Nixon who was the rightful owner of same and had never been paid for said property by her or Tommy Nixon. Further, the Court finds that the Plaintiffs failed to pay anything on the note and mortgage for the 39 acre parcel to Mrs. Vandiver. To set aside the conveyance from Mrs. Dwy Nal Nixon Vandiver to Mrs. Jessie G. Nixon so that the Plaintiffs can satisfy a judgment they have against Mrs. Dwy Nal Nixon Vandiver would be fundamentally unfair and inequitable under the evidence presented in this matter. The Court can find no actual or constructive fraud from the evidence presented."
Because this Court is governed by its ore tenus standard of review, we are required to give great deference to the trial court's findings of fact on this issue. After reviewing the record, we cannot say that the trial court's findings were clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
Because the trial court found from the evidence that the conveyance from Vandiver to Nixon was not fraudulent as to the creditors of Vandiver, the judgment is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON, KENNEDY, INGRAM, and COOK, JJ., concur.
ALMON, J., concurs in the result.
[1] All three corporations are owned by Douglas Goodlett, Sr., and no one contends in this action that Cullman Octa Structure Homes, Inc., and Goodlett Corporation are not proper parties simply because they were not plaintiffs along with Hope Developers, Inc., in the first action.
* "Although the record before us does not disclose a specific adjudication as to count nine, which sought to have the deeds to Jessie G. Nixon and Barbara Ann Farley set aside, the dismissal of those parties from the first action necessarily operated as a dismissal of that count.
** "Obviously the same person as Dwy Nal Nixon, having remarried before the second action was filed."
[2] This appeal involves only the 39 acres. The corporations have waived all claims to the one acre.
[3] The Alabama Uniform Fraudulent Transfer Act, Ala. Code 1975, §§8-9A-1 through -12, became effective in January 1990 and, accordingly, is inapplicable in this case, because the conveyance at issue here occurred on January 3, 1986.