The First Bank of Childersburg ("the Bank") appeals from a $35,000 judgment based on a jury verdict in favor of Florence C. Florey.[1]
Florence Florey is the 85-year-old widow of William G. Florey. Mr. and Mrs. Florey were married for 63 years, until Mr. Florey's death in 1989. They had two children, Sam and Willie Belle. Sam's wife was Diana Florey.
Sometime before December 31, 1986, Mr. and Mrs. Florey had three deeds prepared — one conveying property Mrs. Florey owned ("the Carter place") to Willie Belle, one conveying property Mr. Florey owned ("the Dead Hollow property") to Sam, and one conveying another parcel of property Mr. Florey owned ("the Harris place") to Willie Belle. Mrs. Florey testified that she and her *Page 326 
husband intended to retain their properties as long as they could. They had the deeds prepared, however, so that "business would be taken care of" and they could sign the conveyances shortly before their deaths.
On December 31, 1986, Sam received from his sister Willie Belle an unsigned deed conveying the Dead Hollow property to him. As Willie Belle handed Sam and Diana the deed, she said, "It's your responsibility to get it signed." Sam and Diana immediately went to the senior Mr. Florey's office at Coosa Valley Cooperative Gin ("the Gin company"), the Florey family business, to have Sam's father sign the deed.
Sam testified at trial that he knew how much the land meant to his father and that he did not want to pressure his father to sign the deed at that time. Sam expressed his reluctance to Diana, and, according to Sam, Diana replied, "If you don't have any land, you might not have a wife." Diana then said, "I can sign [Mr. Florey's] name as well as he can," and she then forged Mr. Florey's name to the deed.
Shortly thereafter, Diana called Dorothy Jean Baker, who was a notary public and the branch manager of the Bank. Diana told Baker that she needed to have something notarized, but, she said, Mr. Florey was sick and they did not want to wait. Diana asked if they could "run in and have a deed notarized." Baker testified that Diana and Mr. Florey came to the bank together, and Baker notarized the signature on the deed. Baker did not talk to Mr. Florey. She did not ask if the signature was his. At trial, Baker could not recall whether she saw Mr. Florey sign the deed or whether it was already signed when it was brought in. All she remembered was that Diana and Mr. Florey came in together, Mr. Florey sat in a chair, and Baker notarized the deed. She testified that Mr. Florey "came in with [Diana]; that was my acknowledgment that he signed the paper." On cross-examination, Baker responded "yes" to the question whether Mr. Florey's "mere presence there was all [she] needed." Baker stated that she had been doing business with the Floreys for years and she had seen Mr. Florey's signature on many occasions.
The evidence was undisputed that on the same day, December 31, 1986, Baker also notarized the deed to the Carter place from Mrs. Florey to Willie Belle. Mrs. Florey did not question the propriety of that notarization.
In May 1989, Sam conveyed a one-half interest in the Dead Hollow property to Diana. Diana took the deed representing that conveyance to the Bank to have it notarized. Yvonne Clinkscales, an employee of the Bank, testified that she notarized the deed based on Diana's statement that Sam had signed it. Clinkscales had seen Sam Florey's signature before, but she did not see him sign the deed she notarized. She did not discuss her notarization of the deed with Baker.
Sam and Diana later borrowed money from the Bank, and the Bank took a mortgage on the Dead Hollow property. The Bank subsequently foreclosed on the property and obtained a $32,000 judgment against Sam and Diana. In October 1989, Mr. Florey died. In 1990, Diana sued for a divorce from Sam. That same year, Sam's conscience began to bother him, he told his mother about the forged deed, and he quit-claimed his interest in the property to Mrs. Florey.
In 1993, Mrs. Florey brought an action based on allegations of fraud and conspiracy against Sam, Diana, Willie Belle, Baker, and the Bank.[2] Eventually Sam, Diana, and Willie Belle were dismissed as defendants to the lawsuit, and the fraud and conspiracy case proceeded against Baker and the Bank. Immediately before the trial of this case, Diana deeded her interest in the property to Mrs. Florey.
Diana did not testify at trial. Sam provided the only eyewitness testimony regarding the alleged forgery of the Dead Hollow deed, *Page 327 
and Baker provided the only eyewitness testimony concerning the notarization of that deed. Mrs. Florey's expert witness testified that the signature on the deed was "probably a forgery." The expert witness who testified on behalf of Baker and the Bank gave his opinion that the signature was genuine. Following a jury verdict for Mrs. Florey, only the Bank appealed.
 I. Limitations
The Bank contends that the trial court erred by denying its motion for a directed verdict because, it argues, Mrs. Florey's fraud action was barred by the statute of limitations. The Bank insists that Mrs. Florey knew of facts that should have placed her on notice of the alleged fraud more than two years before she filed her complaint in 1993.
Specifically, the Bank points to evidence establishing that, before the allegedly fraudulent conveyance of the Dead Hollow property to Sam on December 31, 1986, Mrs. Florey had received the ad valorem tax notices and had paid the taxes on all the property she and Mr. Florey owned. She had also received rent from Sam and Diana for the use of the Dead Hollow property. Beginning in 1988, however, Mrs. Florey neither received tax notices nor paid property taxes on the Dead Hollow property. In addition, she received no further rent payments from Sam and Diana for the use of the property. Therefore, the Bank claims, Mrs. Florey should have been aware by 1988 that her husband was no longer the record owner of the Dead Hollow property.
"The question of when a party discovered or should have discovered fraud so as to begin the running of the statutory period of limitations is generally for the jury." Allen GroupLeasing Corp. v. McGugin, 537 So.2d 22, 23 (Ala. 1988);Vandegrift v. Lagrone, 477 So.2d 292, 295 (Ala. 1985). Mrs. Florey's trial testimony indicates that her advancing age and her reliance on Sam and Diana to help her with business matters after her husband's death were the reasons for her failure to realize that she had received neither tax notices nor rent for the Dead Hollow property.
Given those facts, the evidence did not clearly warrant a ruling that Mrs. Florey ought to have discovered the alleged fraud earlier than she did, and the trial court correctly left the issue for the jury's resolution. See Johnson v. Life Ins.Co. of Alabama, 581 So.2d 438, 442 (Ala. 1991).
 II. Conspiracy
The Bank argues that the trial court erred by denying its motions for directed verdict and JNOV on the conspiracy counts of the complaint because, it claims, Mrs. Florey presented insufficient evidence of conspiracy.
In order to prove conspiracy, a plaintiff must allege and prove that the defendant (here Baker, as an agent of the Bank) agreed with at least one other coconspirator (here, Diana) to accomplish an unlawful end (here, to enable Sam and Diana to acquire the Dead Hollow property fraudulently) and intended to have that unlawful end brought about. See Eidson v. Olin Corp.,527 So.2d 1283 (Ala. 1988). The essence of a conspiracy is an agreement, a meeting of the minds between the conspirators. Id.
One cannot inadvertently become a member of a civil conspiracy.Rogers v. R.J. Reynolds Tobacco Co., 761 S.W.2d 788, 797
(Tex.App. 1988). The plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy.
 " '[F]or conspiracy the test is "what is in truth the object in the minds of the combiners when they acted as they did." Malice in the sense of malevolence, spite or ill-will is not an essential for liability; what is required is that the combiners should have acted in order that (not so that) the plaintiff should suffer damage. If they did not act in order that the plaintiff should suffer damage they are not liable, however selfish their attitude and however inevitable the plaintiffs damage may have been.' "
AmSouth Bank, N.A. v. Spigener, 505 So.2d 1030, 1040 (Ala. 1986) (quoting Jolowicz Lewis, Winfield on Torts, Conspiracy 557, 559, 560 (8th ed. 1967) (emphasis in original). *Page 328 
"Proof that a defendant had some collateral involvement in a transaction, and had good reason to believe that there existed a conspiracy among other parties to it, is insufficient of itself to establish that the defendant was a conspirator,"Zervas v. Faulkner, 861 F.2d 823, 836 (5th Cir. 1988)).
"Although civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement [between co-conspirators] must be sufficient to create more than suspicion or conjecture in order to justify submission to a jury." Henderson v. LeBauer, 101 N.C. App. 255, 261,399 S.E.2d 142, 145, review denied, 328 N.C. 731, 404 S.E.2d 868
(1991). "[I]f circumstantial evidence supports equal inferences of lawful action and unlawful action, then the claim of conspiracy is not proven." Allen O'Hara, Inc. v. BarrettWrecking, Inc., 898 F.2d 512, 516 (7th Cir. 1990).
In this case, there was no evidence that Baker knew or had reason to suspect that Mr. Florey's signature on the Dead Hollow deed was forged. When Diana sought to have the deed notarized, she brought Mr. Florey to the Bank with her. Baker knew Mr. Florey and was familiar with his signature. There is simply nothing about those circumstances that gives rise to the inference that Baker was aware of the alleged forgery.
In Zervas v. Faulkner, supra, a buyer of condominium developments sued the seller, the construction lender, and the title company closing agent for conspiracy to defraud him in the sale of real estate. The buyer alleged that a forged appraisal, valuing the property at an inflated price, was evidence of the conspiracy. The appraisal was purportedly signed by an appraiser who had dealt with the other defendants on previous real estate transactions.
The Court of Appeals for the Fifth Circuit held that the buyer did not present sufficient evidence of a conspiracy. The court observed that the buyer could not rely on the forged appraisal to prove a conspiracy because
 "there is no substantial evidence that either [the seller] or [the closing agent] knew or suspected, or even had reason to suspect, that the appraisal was forged . . . or that [the seller or closing agent] had any part in furnishing the appraisal, much less any part in concocting it."
Zervas v. Faulkner, 861 F.2d at 836. The court then outlined the following general principles relating to conspiracy:
 "For a defendant to be liable for civil conspiracy to defraud, it must be shown not only that there was such a conspiracy but that the particular defendant charged agreed with one or more of the other conspirators on the claimed illegal object of the conspiracy — here the defrauding of [the buyer] in his purchase of the 14.55 acres — and intended to have it brought about. As the Texas Supreme Court said in the somewhat analogous case of Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp., 435 S.W.2d 854, 857 (Tex. 1968), civil conspiracy requires ' "a meeting of the minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; . . . there must be a preconceived plan and unity of design or purpose" ' (quoting with approval 15 C.J.S. Conspiracy § 2 at 600). The Texas court there likewise held that a civil 'conspiracy to defraud' requires. ' " 'a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that is common to each . . . and that each has the understanding that the other has that purpose.' " ' Id. (emphasis added by Texas Supreme Court) (quoting with approval from Brumley v. Chattanooga Speedway Motordrome Co., 138 Tenn. 534, 198 S.W. 775, 776 (1917)). . . . Although a conspiracy is usually proved by circumstantial evidence, nevertheless ' "vital facts may not be proved by unreasonable inferences from other facts and circumstances" ' or ' "by piling inference upon inference." ' [Schlumberger] at 858. See also Mack v. Newton, 737 F.2d 1343, 1350-54 (5th Cir. 1984). Moreover, ' " 'mere presence at the scene . . . or close association with a coconspirator will not support an inference of participation' " ' in a conspiracy. United States v. Basey, 816 F.2d 980, 1002 (5th Cir. 1987) (quoting United States v. Vergara, 687 F.2d 57, 61 (5th *Page 329 
Cir. 1982)). See also United States v. Stanley, 765 F.2d 1224, 1236-37, 1243-44 (5th Cir. 1985); United States v. Jackson, 700 F.2d 181, 185 (5th Cir.), cert. denied, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).[13]
Zervas v. Faulkner, 861 F.2d at 836-37.
At trial, Mrs. Florey argued that a conspiracy between Diana and Baker could be inferred from the following circumstances: (1) the facts surrounding the notarization of the deed conveying the Dead Hollow property from Mr. Florey to Sam; (2) the facts surrounding the notarization of the deed conveying a one-half interest in the Dead Hollow property from Sam to Diana; and (3) other suspicious dealings between Diana and Baker.
The facts surrounding Baker's notarization of the deed conveying the Dead Hollow property from Mr. Florey to Sam do not establish concerted action by Diana and Baker pursuant to a prior agreement to defraud. As we have already pointed out, those facts do not give rise to an inference that Baker knew the deed was forged. They are as consistent with the lack of fraudulent intent as they are with the presence of fraudulent intent and, therefore, do not prove a conspiracy. Allen O'Hara, Inc. v. Barrett Wrecking, Inc., 898 F.2d at 516.
The facts surrounding the notarization of the deed conveying a one-half interest in the Dead Hollow property from Sam to Diana add nothing toward proving the allegation of conspiracy between Diana and Baker. Baker did not even notarize this deed. It was notarized by Yvonne Clinkscales, and Clinkscales testified that she did not discuss the matter with Baker. We fail to see how this circumstance supports the claim of a conspiracy between Diana and Baker.
As proof of the third circumstance, Mrs. Florey offered, and the trial court admitted, evidence that on August 3, 1989, over two and one-half years after the alleged forgery and notarization of the Dead Hollow deed, Diana presented a $20,000 check at the bank. The check was payable to the Gin company, a Florey family business that also had its account at the bank. Diana's name was on the signature card for that account. After presentation of the $20,000 check, Diana received three $5000 cashier's checks payable to "Diana or Sam Florey," plus $5000 in cash. Diana deposited the three cashier's checks in her personal account and retained the cash. Baker signed the cashier's checks.
The attorneys for Baker and the Bank objected to the admission of the foregoing evidence on the ground that it was irrelevant. The trial court asked Mrs. Florey's counsel whether he "expect[ed] to tie this in," and when counsel answered "yes," the court allowed the evidence. Sometime later, the court commented, "I'm really curious to see how you are going to tie in the checks, but go ahead." Mrs. Florey's counsel argued that the evidence was admissible "to show a course of continuing dealing between Dorothy Jean Baker and Diana Florey wherein . . . there was some conniving and scheming going on between Diana and Dorothy Jean Baker."
Even supposing this evidence was admissible (an issue not raised on appeal), we do not think the evidence tends to prove a conspiracy to acquire the Dead Hollow property fraudulently. "[C]onspiracy is not actionable if the plaintiff cannot prove a wrong committed through the conspiracy. Speculations of misconduct fall short of proof thereof." Kelter v. SecurityFederal Sav. Loan Ass'n, 555 So.2d 151, 155 (Ala. 1989). Here, it is pure speculation that Baker's participation in Diana's cashing of the Gin company check was evidence of "conniving and scheming" between the two women. On its face, there was nothing untoward about Diana's presentation of the check for payment. She was an authorized signatory to the Gin company account. Furthermore, the manner in which Diana directed the proceeds of the check to be disbursed, while somewhat curious, was not, on its face, improper. Finally, the fact that Baker signed the cashier's checks cannot, without more, be construed as evidence *Page 330 
that Baker and Diana were "conniving and scheming," because the evidence was undisputed that, as branch manager of the Bank, Baker was the only Bank employee authorized to sign cashier's checks.
Even assuming, however, that Diana forged the Dead Hollow deed and misappropriated funds belonging to the Gin company, there was absolutely no evidence that Baker knew of, agreed to, or had reason to suspect, any impropriety in either transaction. The mere fact that the two women knew each other and had had prior dealings does not, without more, establish that they were acting in concert pursuant to a prior agreement.See Williams v. Citizens Nat'l Bank of Shawmut, 570 So.2d 635
(Ala. 1990) (no evidence of conspiracy between bank and borrower's attorney despite the fact that attorney had represented the bank on occasion and owned stock in the bank);Sadie v. Martin, 468 So.2d 162 (Ala. 1985) (fact that alleged conspirators were good friends and business associates does not prove conspiracy to defraud).
Responding to a similar argument in Scott v. CommonwealthLand Title Ins. Co., 518 So.2d 102 (Ala. 1987), that prior dealings between an escrow agent and a real estate buyer established a conspiracy between them to forge a deed to the plaintiff's property and hide the forgery by an escrow arrangement, the Alabama Supreme Court observed:
 "We find no evidence that [the escrow agent] knew any particulars of the agreement between [the real estate buyer] and the [plaintiffs], whatever they were. There is no evidence that [the escrow agent] knew that the deed to it of the property was claimed to be a forgery. . . .
 "The [plaintiffs] argue that a jury could infer that the arrangement between these two defendants was used to hide the fact that the [plaintiffs] were deeding their land to [the real estate buyer]. We disagree. We find no evidence to support the contention that [the escrow agent] intended in any way to conspire with [the real estate buyer].
 "To find otherwise would be to adopt a new rule — a rule to the effect that one person's material relationship with a person accused of fraud makes that first person subject to a claim of conspiracy to commit fraud. This is a step we refuse to take."
Scott, 518 So.2d at 104-05 (emphasis added). Holding that the plaintiffs in Scott had failed to present any evidence in support of their conspiracy claim, the court observed:
 "We acknowledge that a great quantum of detail may not be required to prove the formation of a conspiracy, and that because of its secretive nature proof of a conspiracy must often be inferentially and circumstantially derived from the character of the act done, but a plaintiff is not relieved of the burden of supplying at least sufficient evidence from which the factfinder can infer that a conspiracy existed."
Scott, 518 So.2d at 104 (internal citation omitted). In this case, we must conclude that Mrs. Florey did not sustain her burden of producing sufficient evidence from which the jury could infer that a conspiracy between Diana and Baker existed.
 III. Proof of Restitution
The Bank argues that it was entitled to a mistrial after the plaintiff's attorney elicited from Baker the fact that she had previously been convicted of embezzling funds and had been ordered to make restitution to the Bank.
In questioning a witness as to her conviction of a crime, "[t]he law of Alabama, in keeping with the general rule in this country, is that one generally cannot go beyond the name of the crime, the time and place of conviction, and the punishment." C. Gamble, McElroy's Alabama Evidence § 145.01(11) at 382 (4th ed. 1991). Restitution is a component of a criminal sentencing procedure and, as such, constitutes "punishment." See Hill v.Bradford, 565 So.2d 208, 210 (Ala. 1990). Therefore, it was permissible to ask Baker whether she was ordered to make restitution as a consequence of her prior conviction.
Further details about the crime, however, such as the name of the victim, are inadmissible. Wynn v. State, 423 So.2d 294, 301
(Ala.Crim.App. 1982). It was, therefore, impermissible to question Baker about the *Page 331 
name of the entity to whom she was ordered to pay restitution. The trial court erred by overruling the objection to the question, but the error was cured when the court instructed the jury as follows:
 "Ladies and gentlemen, you heard testimony concerning the defendant Ms. Baker's conviction of the crime of embezzlement. I will mention to you that the only thing you can consider in that regard would go to impeachment purposes. It doesn't have anything to do with anything other than that. It doesn't have anything to do with any claim . . . in this case by the plaintiff against the defendant. Its only . . . use[ ], if you use it at all, would be for impeachment purposes. Does everybody understand that?"
Because the trial court instructed the jury that it could not consider Baker's prior conviction as substantive evidence supporting Mrs. Florey's claim against the defendants, we must presume that any prejudice arising from revealing the name of the entity to whom Baker was ordered to make restitution was cured. See King v. State, 521 So.2d 1360, 1361-62
(Ala.Crim.App. 1987).
 IV. Fraudulent Notarization
The Bank's remaining arguments concern Baker's liability for the alleged fraudulent notarization of the Dead Hollow deed. The Bank claims that the trial court erred by instructing the jury on the liability of a notary public and by submitting to the jury a special interrogatory concerning whether Baker had properly notarized the Dead Hollow deed. The Bank also contends that the trial court erred by failing to grant its motions for a directed verdict and for a JNOV on Mrs. Florey's claim that the deed was fraudulently notarized.
 The Jury Charge
The court gave the following instruction in its oral charge to the jury:
 "I charge you ladies and gentlemen that where a notary public is called on to perform an act authorized by law, and he does so carelessly and fraudulently, the notary is liable for any loss resulting from the fraudulent conduct."
The Bank insists that the charge is a misstatement of the law because, it says, "there is no cognizable independent cause of action for improper notarization."
If the Bank is arguing that there is no longer a statutory offense of willfully fraudulent notarization in Alabama, it is correct. Section 36-10-4, Ala. Code 1975, which provided for two to ten years' imprisonment for a notary "who, with intent to injure or defraud, or to enable any other person to do so, wilfully certifies that any conveyance was duly proved or acknowledged when such acknowledgment was not in fact made," was repealed by 1977 Ala. Acts 607, § 9901 (effective January 1, 1980). If, however, the Bank is arguing that a notary has no common law liability for breach of duty, then it is incorrect.
The liability of a notary public is founded on the common law and predates any statutory duty. Independence Leasing Corp. v.Aquino, 111 Misc.2d 1039, 445 N.Y.S.2d 893, 894
(Buffalo City Ct. 1981). A notary has the duty to use ordinary reasonable care in the performance of his functions. Immerman v. Ostertag,83 N.J. Super. 364, 370, 199 A.2d 869, 873 (1964). As the Alabama Supreme Court observed in Butler v. Olshan, 280 Ala. 181,190-91, 191 So.2d 7, 16 (1966), "A notary public is not an insurer, but he is under a duty to his clients to act honestly, skillfully, and with reasonable diligence." "In the absence of statute, a notary is held to the care and diligence of a reasonably prudent man to ascertain the acknowledger's identity, but is not an insurer of the truth of the recitals."Manufacturers Acceptance Corp. v. Vaughn, 43 Tenn. App. 9,29-30, 305 S.W.2d 513, 522 (1957) (quoting Figuers v. Fly,137 Tenn. 358, 369, 193 S.W. 117, 120 (1917)).
The portion of the court's charge quoted above is taken from the decision in Butler v. Olshan, supra. The charge was not erroneous on the basis asserted by the bank.
 The Special Interrogatory
The court issued the following special interrogatory to the jury: "Was the deed dated December 31, 1986 conveying the property *Page 332 
to Sam Florey properly acknowledged?" The Bank argues that it was not timely informed of the court's intention to submit the interrogatory.
Rule 49(d), A.R.Civ.P., states that the court shall not submit a special interrogatory to the jury
 "unless the court, within a reasonable time before final arguments are made to the jury, provides to the attorneys for all parties a copy of the written questions or interrogatories, as the case may be, to be submitted to the jury."
After the Bank had completed its closing argument, the court advised the parties that it intended to submit the interrogatory. Counsel for the Bank objected to the substance of the written question, but not to the untimeliness of the court's notification. The Bank has therefore failed to preserve for our review the tardiness of the court's notification. SeeFord v. Canton, 530 So.2d 217, 223 (Ala. 1988) (notice requirements of Rule 49(d), Ala.R.Civ.P., can be waived). Compare Trimble v. Bramco Products, Inc., 351 So.2d 1357
(Ala. 1977) (construing Rule 51, Ala.R.Civ.P.) (failure of trial court to inform counsel before argument of its action with respect to requested charges does not mandate reversal unless court refuses to follow rule after its attention has been called to it or prejudice results therefrom).
 The Sufficiency of the Evidence of Fraudulent Notarization
The Bank argues that Mrs. Florey did not establish Baker's fraudulent notarization of the deed because, it says, she failed to prove that Baker committed actual fraud: that Baker misrepresented a material existing fact that was relied on by Mrs. Florey to her detriment. Mrs. Florey maintains that she was not required to prove that Baker committed actual fraud, but only that Baker committed constructive fraud.
It is true that fraudulent intent does not have to be proven to establish a constructive fraud. See Ex parte Cheriogotis,553 So.2d 558 (Ala. 1989); Hornaday v. First Nat'l Bank ofBirmingham, 259 Ala. 26, 65 So.2d 678 (1952). The Alabama Supreme Court has explained the distinction between actual fraud and constructive fraud as follows:
 "Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor. On the other hand, constructive fraud is based on facts and circumstances which courts have said constitute legal fraud, regardless of actual intent."
Hope Developers, Inc. v. Vandiver, 665 So.2d 910, 913
(Ala. 1995).
On this issue, the court charged the jury:
 "A notary public owes to his clients a duty to act honestly, skillfully, and with reasonable diligence. This duty imposed on a notary public requires the notary to ascertain the identity of the person whose signature they attest. Therefore, this duty cannot be fulfilled unless the transaction is done by or before the notary. For these reasons the duty of the notary public requires that he not wilfully and intentionally certify that a person has acknowledged the execution of a conveyance when the person did not acknowledge the execution before the notary. When a notary does such, this would constitute constructive fraud. The grantor's mere presence is not sufficient to constitute a valid notarization. In order to be effective there must be an actual signing or acknowledgment of a signature in the presence of the notary."
The foregoing charge is derived from language in Butler v.Olshan, supra, a decision that applied the concept of constructive fraud to the conduct of a notary. The Bank attempts to distinguish Butler on the basis that the purported grantor in Butler was not in the presence of the notary when his signature was notarized, whereas here, Mr. Florey was present when Baker notarized the Dead Hollow deed.
That distinction is immaterial because, as the trial court correctly charged the jury, "[t]he grantor's mere presence is not sufficient" to constitute a valid acknowledgment.
 "In order for an acknowledgment to be effective, it must clearly identify the person or persons who executed the conveyance, and the person signing the instrument *Page 333 
must have appeared before the notary and acknowledged that he signed the instrument."
Central Bank of the South v. Dinsmore, 475 So.2d 842, 845
(Ala. 1985) (emphasis added).
One who notarizes a conveyance without the signer's acknowledgment, therefore, commits constructive fraud within the meaning of Butler v. Olshan. The facts adduced at trial — specifically, the fact that Baker could not remember whether Mr. Florey signed the deed in her presence — presented a jury question as to whether Mr. Florey "appeared before the notary and acknowledged that he signed the instrument." Compare Farmerv. Hypo Holdings, Inc., 675 So.2d 387 (Ala. 1996) (on rehearing) (although mortgagors denied that they signed mortgage in notary's presence, notary executed an affidavit that mortgagors did sign in his presence).
As we have discussed in Part II of this opinion, the trial court erred by submitting the conspiracy claim to the jury. It did not err, however, in submitting to the jury the claim of fraudulent notarization. The jury's affirmative answer to the special interrogatory demonstrates that it found Baker (and, therefore, the Bank) liable on the fraudulent notarization, or constructive fraud, claim. Thus, despite the error of submitting the conspiracy claim to the jury, no new trial is necessary because the jury indicated, by its answer to the special interrogatory, that its verdict was based on the properly submitted claim. Compare Deere Co. v. Grose,586 So.2d 196 (Ala. 1991); Old Southern Life Ins. Co. v. Spann,472 So.2d 987 (Ala. 1985) (when two claims are submitted to the jury — one supported by the evidence and one unsupported by the evidence — a reviewing court may not presume that a general verdict was based on the properly submitted claim).
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.
[1] Although the plaintiff's name is listed at various places in the record as "Florence C. Florey" and as "Florence G. Florey," Mrs. Florey's affidavit is signed "Florence C.," and we have adopted that version of her name in this opinion.
[2] Whether Mrs. Florey's claims for fraud that were made in her representative capacity should have been dismissed on the ground that Mr. Florey's cause of action for fraud failed to survive his death was not raised below and is not an issue on appeal. See First Bank of Boaz v. Fielder, 590 So.2d 893, 896
n. 3 (Ala. 1991).
[13] "We recognize that these are criminal cases, and we do not suggest that the beyond a reasonable doubt standard applies to civil conspiracy actions, RICO or otherwise. Nevertheless, the general principles of circumstantial evidence and proof of conspiracy are similar."