816 So.2d 38 (2001)
Brenda BAYLES and Mitch Bayles
v.
Deborah MARRIOTT et al.
2991233.
Court of Civil Appeals of Alabama.
May 11, 2001.
Rehearing Denied July 20, 2001.
Certiorari Denied October 5, 2001.
*39 S. Mark Andrews and Angela J. Mason of Cochran, Cherry, Givens & Smith, P.C., Dothan, for appellants.
Mark S. Boardman and Dana J. Bolden of Boardman, Carr & Weed, P.C., Birmingham, for appellees.
Alabama Supreme Court 1001930.
THOMPSON, Judge.
The plaintiff, Brenda Bayles (along with her husband Mitch Bayles, who has a derivative claim) appeals from a judgment as a matter of law ("JML") entered by the trial court in favor of the defendants Deborah Marriott, Carolyn Ellis, Beth Barnes, and Kelly Hudson. Following a four-day trial, at which the evidence on behalf of Bayles was presented, the trial court granted the defendants' motion for a JML. Bayles appealed to the supreme court; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code, 1975.
On appeal Bayles contends that the trial court erred in entering a JML on her claims of negligence, wantonness, and conspiracy.
This action arose out of an event that occurred on May 29, 1998, the last day of the 1998 school year for Monroeville Elementary School. Various teachers were called into Ms. Swanee King's[1] office for the apparent purpose of completing student records. As each teacher arrived in King's office, he or she was directed to sit down. Only one chair was available, and it was located directly opposite King's desk. As each teacher sat in the chair, the chair slowly reclined in the back, causing the back portion of the seat to sink down and the front part to slant upwards. As each teacher sat in this "sinking" chair, King and the other teachers who were present would laugh. The teachers would then summon to King's office another staff member, on whom they could play the practical joke.
*40 At least five teachers sat in the reclining chair and experienced the sinking sensation as the back legs of the chair spread out, lowering the rear of the seat. None of these five persons was hurt or frightened by the trick. The school principal, Deborah Marriott, was one of the first people duped by the "sinking" chair. Marriott left the school early that day to leave town for a family wedding. After she had left, King and various teachers continued to trick other staff members with the chair.
After Wendy Baggett, who was a teacher's aide to Coach Brenda Bayles, sat in the chair and the joke was played on her, she went to get Coach Bayles so that Bayles could be tricked with the chair. When Bayles arrived in the office, King instructed her to sit in the chair. Bayles alleges that when she sat in the chair and it slowly reclined under her, she reinjured her back, upon which she had undergone several surgical procedures.
Bayles sued Marriott and King, alleging negligence, wantonness, conspiracy, and failure to warn. Mitch Bayles, Bayles's husband, sued for loss of consortium. Following discovery, Bayles amended her complaint to include Carolyn Ellis, the assistant principal, and two teachers, Kelly Hudson and Beth Barnes, as defendants. Before trial, Bayles dismissed King as a defendant.[2] Following Bayles's presentation of evidence at a jury trial, the trial court entered a JML in favor of the defendants, without citing the grounds therefor. This appeal followed.
With regard to appellate review of a JML, our supreme court has stated:
"When reviewing a ruling on a motion for JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. For actions filed after June 11, 1987, the nonmovant must present substantial evidence in order to withstand a motion for JML. A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by a jury. In reviewing a motion for JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling."
Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 974-75 (Ala.1998) (citations omitted).
The defendants remaining in the action at the time of trial were Marriott, the principal; Ellis, the assistant principal; and Barnes and Hudson, who were both teachers in the elementary school.
Only Marriott testified that she was responsible for safety of the school campus and premises. The sole documentary evidence of the principal's school-safety responsibility contained in the record is found in the "Monroe County School Policies," which provide:
"[T]he principal shall be immediately responsible for the condition of the school plant and shall provide direct supervision to the custodial maintenance personnel assigned to his[ her] building. The principal will ... [i]nspect the school plant periodically for conditions that might endanger the health and *41 safety of students and or employees. Fire, accident and health hazards should be remedied or reported immediately.... [Principals should] [i]nitiate through the Maintenance supervisor, when necessary, prompt correction of safety related deficiencies in the school plant or grounds."
Marriott testified that she had familiarized herself with the school's safety guidelines and had, in the past, reported hazardous or worn-out equipment to the Monroe County School System. This policy is broadly phrased and is drafted in general terms designed to advise the principal of his or her responsibility for the overall safe condition of the school plant. Our supreme court in Ex parte Butts, 775 So.2d 173 (Ala.2000), adopted a test for state-agent immunity; that test was initially suggested by a plurality of that court in Ex parte Cranman, 792 So.2d 392 (Ala. 2000):
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing prisoners of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
Ex parte Cranman, 792 So.2d at 405. Marriott knew of the condition of the chair, because she had sat in it earlier on the date of the accident, and it had slowly reclined under her weight. Marriott testified that she never viewed the chair as a safety problem. It is undisputed that Marriott left shortly after the joke was played on her and that she was absent from the school when King asked Bayles to sit in the chair.
We reason that Marriott, as principal, was exercising her judgment regarding school safety and conclude that she is entitled to State-agent immunity on Bayles's claims of negligence and wantonness. We might reach a different result if, instead of the broadly stated, general safety policy, *42 Marriott had instead been responsible for following a detailed rule or checklist and had failed in this responsibility. See Ex parte Butts, 775 So.2d at 178. In addition, Marriott would not have been entitled to State-agent immunity if there had been any evidence of willful, malicious, or fraudulent behavior, evidence of bad faith, or evidence of actions beyond her authority or done under a mistaken interpretation of the law. Id. But the posture of this appeal is unlike that in Ex parte Butts; in Ex parte Butts an appeal was taken from a Rule 12(b)(6) motion, and in the present case the appeal is from a JML entered after the presentation of all of the plaintiffs' evidence. Bayles presented no evidence of any detailed safety rule or checklist.
Further, Bayles presented no evidence of willful or malicious behavior on Marriott's part. "Wantonness" is defined by statute as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." § 6-11-20(b)(3). Our supreme court has defined "wantonness" as the "conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998)(citing Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala.1994)). We conclude that the trial court properly entered the JML in favor of Marriott on Bayles's claims of negligence and wantonness.
The evidence was undisputed that Ellis, the assistant principal, and teachers Barnes and Hudson had never received any training on safety guidelines regarding the school premises and were not charged by the terms of the Monroe County School Policies with a responsibility to monitor the safety of school premises and equipment. In order to prevail on a claim of negligence, a claimant must show that the defendant owed the claimant a duty, that the defendant breached that duty, and that the breach of duty proximately caused the claimant's injuries. Martin v. Arnold, 643 So.2d 564, 567 (Ala. 1994). The evidence does not support the inference that Ellis, Barnes, and Hudson owed a duty to Bayles to warn her that the chair would "sink" under her weight. See, Morris v. Merritt Oil Co., 686 So.2d 1139, 1142 (Ala.1996). Further, there is no evidence that Ellis, Barnes, and Hudson intended to harm Bayles or to recklessly expose her to a dangerous situation. We therefore affirm the JML in favor of Ellis, Barnes, and Hudson, on Bayles's claims of negligence and wantonness.
Bayles also argues that the trial court incorrectly entered the JML in favor of the defendants on her conspiracy allegation. From the following statement, made in open court by the attorney representing Bayles, it appears that he, on behalf of his clients, voluntarily dismissed many of their claims, including the claim of conspiracy, prior to the trial court's ruling on the defendants's motion for a JML. The Bayleses' attorney stated: "As far as all of the other arguments, the plaintiffs are voluntarily dismissing the tort claims. They are not at issue. We are voluntarily withdrawing the claim for punitive damages also. It's not being argued at this point. We are asking to go to the jury on the negligence/wantonness claim." Because this statement implies, but does not make it completely clear, that the Bayleses intended to dismiss all of their claims with the exception of the claim alleging negligence or wantonness, we will briefly address the merits of their arguments on their conspiracy claim.
"A civil conspiracy requires a combination of two or more individuals to *43 accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." McLemore v. Ford Motor Co., 628 So.2d 548, 550 (Ala.1993). A conspiracy requires a meeting of the minds between the conspirators. First Bank of Childersburg v. Florey, 676 So.2d 324 (Ala.Civ.App.1996). In addition, in order to establish a claim of conspiracy, Bayles would have to prove that the defendants intended to bring about the object of the claimed conspiracy. Id., at 327. After reviewing the record, we conclude that Bayles presented no evidence from which one could infer that any of the named defendants entered into a plan or an agreement to injure her.
The judgment of the trial court is affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in part and concurs in the result in part.
MURDOCK, Judge, concurring in part and concurring in the result in part.
I concur in the result reached by the majority as to Bayles's claim against Marriott, the principal. While the chair in question arguably was a "deficienc[y] in the school plant or grounds" within the meaning of the Monroe County School Policies, in my view, the independent, intervening use of that "deficiency" in a practical joke by the guidance counselor, King, was the proximate cause of Bayles's injury. Accordingly, any responsibility Marriott may have had for King's actions would result from her negligence in "exercising... her judgment in the administration of a department or agency of government," including "supervising personnel," and Marriott would be entitled to immunity for that reason. Ex parte Butts, 775 So.2d 173, 177-78 (Ala.2000).
In all other respects, I concur as to both the reasoning and the results expressed in the majority opinion.
NOTES
[1] King was the guidance counselor for Monroeville Elementary School.
[2] The record does not indicate why King was dismissed from the action.