William Segrest, the executive director of the State Board of Pardons and Paroles, appeals from a summary judgment entered in favor of the plaintiff, Latangle Lewis.
The parties stipulated to the following facts: Lewis was employed with the Retirement Systems of Alabama ("RSA") as an Administrative Support Assistant I, at a salary of $789.20 biweekly. During her probationary period, Lewis interviewed for a similar position with the State Board of Pardons and Paroles (hereinafter "the Parole Board"). She intended to laterally transfer her employment from RSA to the Parole Board. On March 18, 2002, the Parole Board voted to employ Lewis as an "ASA I transfer from RSA to the Central Office effective April 6, 2002." *Page 454 
On March 20, 2002, Segrest sent Lewis a letter that stated:
 "Your request for lateral transfer has been approved and appropriate forms will be forwarded to the State Personnel Department for their approval as soon as they are received from your agency.
 "You will be assigned to the Central Office, . . ., Montgomery, Alabama. . . . Please report to Ms. Carolyn Flack at 8:00 a.m. on Monday, April 8, 2002, to begin your employment.
 "I have attached forms you need to fill out and return to Ruth Peters, Personnel Manager. . . . Enclosed are departmental policies. Please sign the receipts for these policies and return them to Ms. Peters.
 "If you have any questions please feel free to call me. We look forward to working with you."
Evidently in reliance upon the March 20, 2002, letter from Segrest, on March 22, 2002, Lewis sent a letter to RSA stating that she would be leaving RSA on April 5, 2002, to assume a position with the Parole Board on April 8, 2002. The State Personnel Department did not approve Lewis's transfer to the Parole Board, however. The Parole Board's file copy of a form entitled "Recommendation for Personnel Action" has a handwritten note by a Parole Board employee on the copy, which reflected an oral communication between the State Personnel Department and the Parole Board's personnel office. That note stated: "Voided 4/4/02 by SPD — Employee not reachable on transfer list (Band 5)." Another copy of the same form had "Declined" written across the form.
Because of the adverse action by the State Personnel Department, Lewis requested that she be allowed to retract her resignation from her employment with RSA. On April 2, 2002, RSA informed Lewis that her request to retract her resignation could not be approved because her resignation had been accepted and a "Certification of Candidates" had been issued to fill her position.
On May 3, 2002, Lewis filed an action against Segrest and Thomas Flowers, the director of the State Personnel Department, seeking to enforce Segrest's "commitment to employ Lewis." Lewis also alleged fraudulent misrepresentation and sought back pay and benefits. On May 28, 2002, Flowers moved to dismiss the action against him because nothing in the allegations indicated that he had committed fraud; the trial court subsequently granted Flowers's motion.
Following discovery, the parties filed a joint stipulation of facts and each party filed a motion for a summary judgment. On December 5, 2003, the trial court entered a judgment in favor of Lewis and awarded her $7,102.80. The trial court calculated the back pay from April 5, 2002, to August 8, 2002, when Lewis became employed by the Alabama Board of Nursing.
On appeal, Segrest argues that, although Lewis failed to explicitly allege whether she was suing Segrest in his official capacity or in his individual capacity, Lewis's claims could only be brought against Segrest in his official capacity and that he is therefore entitled to absolute immunity. He also argues that "the State Merit System Act does not permit a lateral transfer of an employee on the approval of the appointing authority of only the receiving agency."
Article I, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." We conclude that the action filed by Lewis — an action in which Lewis sought to require directors of the Parole Board and the *Page 455 
State Personnel Department to take the actions necessary to make her an employee of the Parole Board and to provide her with "back pay" for a period during which she was not so employed — is a suit against the State. The obligation sought to be enforced by Lewis, if one existed, was contractual in nature. As such, it would have been an obligation of the State. Accordingly, based upon the facts presented and the nature of the relief sought, we conclude that Lewis's action is one that sought relief from the named defendants in their official capacities, rather than personally. "Sovereign immunity not only protects state agencies and corporations, but officers, agents or employees in their official capacity where the suits involve a state obligation." Albert W. Copeland Euel A. Screws, Jr.,Governmental Responsibility for Tort in Alabama, 13 Ala. L.Rev. 296, 307 (1961) (footnote omitted) (quoted in Ex parte Cranman,792 So.2d 392, 399 (Ala. 2000)).
Lewis seeks to avoid the bar of sovereign immunity, however, by arguing to this court, among other things, that this case involves tortious conduct — specifically, fraud — committed by Segrest in his individual capacity and as to which Segrest, therefore, is not absolutely immune. Even assuming for the sake of argument that Lewis's action could properly be construed as seeking "back pay" from Segrest, personally, rather than in his official capacity as the director of the Parole Board — the agency on behalf of which Segrest acted and with which Lewis claims she should have been employed — Lewis failed to establish that no genuine issues of material fact existed as to such a claim so as to entitle her to a summary judgment. To the contrary, the facts are such that the doctrine of state-agent immunity, as recognized in Ex parte Butts, 775 So.2d 173 (Ala. 2000), would serve to protect Segrest from liability as a matter of law.
In Ex parte Butts, our Supreme Court adopted a test, which was first set forth in a plurality opinion in Ex parte Cranman,792 So.2d 392 (Ala. 2000), extending "state-agent immunity" to state officials who, though sued in their individual capacities, are sued for their exercise of judgment in the formulation of policies and plans and in the administration of government. Among other things, the Supreme Court in Ex parte Butts held:
 "`A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
 "`. . . .
 "`(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
 "`. . . .
 "`(d) hiring, firing, transferring, assigning, or supervising personnel.'"
Ex parte Butts, 775 So.2d at 177-78 (quoting Ex parteCranman, 792 So.2d at 405).
In the present case, Segrest's actions on behalf of the Parole Board in connection with the attempt to recruit and hire Lewis for employment by that agency go to the heart of the protection intended by the Ex parte Cranman/Ex parte Butts test, protecting as it does the "exercis[e] [of] judgment in the administration of a department or agency of government." Exparte Butts, 775 So.2d at 177 (quoting Ex parte Cranman,792 So.2d at 405). See also Ex parte Cranman, 792 So.2d at 404
(discussing the protection of conduct "related to policy planning and involving the exercise of judgment"). As the chief administrator of a state agency, Segrest made a judgment. That judgment entailed the decision *Page 456 
that Lewis should be hired by the Parole Board. Segrest then exercised his judgment as to how to execute that decision and, specifically, how to communicate that decision both to Lewis and to other affected state agencies. Specifically, Segrest made what would appear to be a sound decision to communicate about this matter to Lewis and the other affected state agencies by means of a written letter and, further, exercised his judgment in deciding how best to word that letter in order to communicate his administrative decision. As we read Ex parte Cranman and Exparte Butts, the exercise by Segrest of his judgment and his decisions as to how he should fulfill his administrative responsibilities with respect to the hiring of an employee such as Lewis is the type of activity that lies at the core of that which the Butts Court had in mind in its explanation of state-agent immunity.
Lewis, however, argues that Segrest's conduct falls within an exception to state-agent immunity that applies when a state agent "`acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'" Ex parte Butts, 775 So.2d at 178 (quoting Ex parteCranman, 792 So.2d at 405).
We do not read this provision from Ex parte Cranman and Exparte Butts, nor do we read any of the progeny of those cases, as holding that an innocent misrepresentation by a state agent falls outside the protection that for so long has been provided by our law to state officials and employees while acting within reason and in good faith in the discharge of their responsibilities to the public. If something more were not required in order for conduct to fall within the exception relied upon by Lewis, that exception would "swallow" the whole of the general rule of immunity itself. Any misrepresentation is beyond the authority of a state agent. Indeed, any misstep by any state employee or other state agent that wrongs another can be said to be beyond his or her authority and/or committed under a mistaken interpretation of the law. Construing the exception at issue in the manner urged by Lewis would mean that missteps by a state agent, no matter how innocently or reasonably taken, would in every case pull the agent out from under the umbrella of state-agent immunity provided by Ex parte Cranman and Ex parteButts and supported by the results reached in decades of decisions that preceded those cases. See Howard v. City ofAtmore, 887 So.2d 201, 206 (Ala. 2003) (Cranman is a "restatement of the law of immunity, not a statute"). Our conclusion in this regard is supported by the fact that the word "fraudulently" appears in the exception articulated in Ex parteCranman and Ex parte Butts sandwiched between the terms "willfully, maliciously," and "in bad faith." Cf. King v. St.Vincent's Hosp., 502 U.S. 215, 221, 112 S.Ct. 570,116 L.Ed.2d 578 (1991) (quoting NLRB v. Federbush Co. 121 F.2d 954, 957 (2d Cir. 1941)) ("`Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used. . . .'").
Our conclusion in this regard also is consistent with the manner in which our appellate courts have applied the principles of immunity to state agents both before and after Ex parteCranman and Ex parte Butts. Compare, e.g., Byrd v. Lamar,846 So.2d 334 (Ala. 2002) (holding that acts of promissory fraud — which require proof that the defendants intended not to perform promised acts — were not protected by state-agent immunity);Tuscaloosa County v. Henderson, 699 So.2d 1274, 1277 *Page 457 
(Ala.Civ.App. 1997) (holding that state-agent immunity was not available to a county employee who sued the plaintiff and had him arrested for operating without a business license because the evidence showed that, in so doing, the defendant acted with "malice, willfullness, or . . . so beyond his authority that sovereign immunity would not apply" (footnote omitted)); Exparte Tuscaloosa County, 796 So.2d 1100, 1106-07 (Ala. 2000) (holding that a state agent was entitled to immunity notwithstanding the fact that there was sufficient evidence for a jury to return a verdict for malicious prosecution, because malice for purposes of malicious prosecution can be based upon a lack of probable cause but such "malice in law" is not enough to satisfy the Ex parte Cranman exception for acts committed "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law"); Bayles v. Marriott, 816 So.2d 38 (Ala.Civ.App. 2001).
Although decided under § 6-5-338, Ala. Code 1975, which is not applicable in this case, this court's decision in Key v. City ofCullman, 826 So.2d 151 (Ala.Civ.App. 2001), also relies upon the principles enunciated in Ex parte Butts and Ex parte Cranman
and is therefore instructive. As this court explained in holding that an investigating police officer for the City of Cullman was entitled to immunity:
 "The questions whether a better method of identifying suspects was available to Bartlett and whether the manner in which Bartlett conducted his investigation was negligent or even reckless are debatable. However, those matters are within the discretion afforded the investigator of a crime, and, therefore, they fall within the immunity provided by State-agent immunity for discretionary acts. See § 6-5-338, Ala. Code 1975; Ex parte Butts, supra."
Key v. City of Cullman, 826 So.2d at 158.
Perhaps in this case Segrest's March 20, 2002, letter, upon which Lewis may have relied in resigning her employment with RSA, could have been written even better than it was. That letter stated that Lewis's request for a lateral transfer to the Parole Board had been approved. In the same sentence, however, the letter states that approval of the transfer by the "State Personnel Department" was also required. Even if the wording of Segrest's letter could have been improved, this would not change the fact that, for all that appears in the record, Segrest acted in good faith in exercising his discretion to word the letter as he did. The fact that there may have been some better wording for the letter does not remove Segrest from the state-agent immunity within which his conduct relating to the hiring of a new employee for the agency he administers squarely falls.
Based upon the foregoing, the summary judgment entered by the trial court is reversed, and the cause is remanded for the entry of a judgment in favor of Segrest.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur. *Page 458