This case involves an allegation of civil conspiracy. The facts involve several parties. *Page 103 
The plaintiff/appellants, Willie L. and Emma M. Scott, owned a house in Montgomery. In 1983, the mortgage on the house was foreclosed. After the foreclosure had been advertised, the Scotts were approached by George T. Van Buren, one of the defendants in this action, and they reached some sort of agreement concerning the disposition of their house.
Van Buren was also involved in real estate dealings in Colorado. As a part of those dealings, he had sold certain property in Colorado to NADFAR, a corporation. Van Buren wanted to buy, at a later date, other property with the proceeds from this sale and still take advantage of the Internal Revenue Code's like-kind exchange rule, I.R.C. § 1031 (1954). To achieve this result, NADFAR made arrangements to pay the money for the Colorado property into an escrow account. The company that handled the escrow account is defendant Commonwealth Land Title Insurance Company. The escrow arrangement was structured to allow Van Buren to use the money paid by NADFAR to purchase similar property (in this case, in Alabama) without the money passing to him. The escrow agreement provided that when Van Buren found a piece of property he wished to purchase, he would notify Commonwealth and it would purchase the property with funds from the account and then sign the property over to Van Buren.
The facts are disputed as to the nature of the Van Buren/Scott agreement. The Scotts assert that Van Buren offered to pay off the arrearage on the mortgage and lease the house to the Scotts for 11 and 2/3 months and that they agreed with him that at the end of that time the debt would be paid and he would turn the property back over to the Scotts. They also claim that they demanded the deed back from Van Buren at the end of the period, but that he refused to give it to them, telling them to wait until he had had time to "draw up the papers."
Van Buren, on the other hand, claims he bought the Scotts' property through Commonwealth and that they signed a warranty deed. Van Buren had them evicted from the house on March 11, 1986. The Scotts signatures are on a warranty deed in favor of Commonwealth dated October 10, 1983 Commonwealth had conveyed title to Van Buren on April 4, 1984. The Scotts claim they intended to sign only a lease agreement. The Scotts sued Van Buren and Commonwealth, alleging that the agreement between the defendants was a conspiracy to keep the Scotts from knowing that the defendants had sold the plaintiffs' property. The trial judge granted Commonwealth's motion for summary judgment; the summary judgment was made final pursuant to Rule 54(b), Ala.R.Civ.P., and the Scotts brought this appeal.
Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of a material fact must be resolved against the moving party. Fountain v.Phillips, 404 So.2d 614 (Ala. 1981); Sadie v. Martin,468 So.2d 162 (Ala. 1985). If there is evidence supporting the motion of the non-moving party, summary judgment is inappropriate. Grossv. Republic Steel Corp., 400 So.2d 383 (Ala. 1981). Applying that rule to this case, all doubts must be resolved in favor of the Scotts, and if evidence exists to support their claim against Commonwealth, then the summary judgment was improper.
Count two of the complaint filed by the Scotts reads: "Defendants acting together and in concert, conspired to defraud plaintiffs out of their property and to place title in defendant Van Buren."
This is the only claim made against Commonwealth; therefore, on this appeal, the issue is whether the plaintiffs presented evidence of a conspiracy between Van Buren and Commonwealth to defraud the Scotts, to rebut the movant's prima facie showing that there had been no conspiracy This Court has, in the past, set out the law of conspiracy:
 "The law of civil conspiracy in Alabama is well stated in O'Dell v. State, 270 Ala. 236, 117 So.2d 164 (1959), viz.: *Page 104 
 " 'A conspiracy is a combination to accomplish an unlawful end or to accomplish a lawful end by unlawful means. Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251; Gaines v. Malone, 244 Ala. 490, 13 So.2d 870.
 " 'Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed. Louisville N.R. Co. v. National Park Bank, 188 Ala. 109, 65 So. 1003; Humphrey v. Terry, 206 Ala. 249, 89 So. 607.
 " 'A conspiracy may be both pleaded and proved as aggravating the wrong complained of and enabling the complainant to recover in one action against all of the joint tortfeasors. . . ."
 " '. . . The existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action. . . .' 270 Ala. at 240, 117 So.2d at 168."
Turner v. Peoples Bank of Pell City, 378 So.2d 706, 708 (Ala. 1979).
We acknowledge that a great quantum of detail may not be required to prove the formation of a conspiracy, and that because of its secretive nature proof of a conspiracy must often be inferentially and circumstantially derived from the character of the act done, O'Dell v. State, 270 Ala. 236,117 So.2d 164 (1959), but a plaintiff is not relieved of the burden of supplying at least sufficient evidence from which the factfinder can infer that a conspiracy existed. See, e.g.,Turner v. Peoples Bank of Pell City, 378 So.2d 706 (Ala. 1979). "It is only by looking to the conduct of the alleged conspirators during the progress of the conspiracy and the end result achieved that usually such a fact [a conspiracy] is established." National Distillers Chemical Corp. v. AmericanLaubscher Corp., 338 So.2d 1269, 1272 (Ala. 1976), quotingBarber v. Stephenson, 260 Ala. 151, 69 So.2d 251 (1954).
In this case, the Scotts contend that Commonwealth and Van Buren conspired to deprive them of their property. We find no evidence before the trial court that would supply the necessary inference of the existence of a conspiracy necessary to defeat Commonwealth's motion for summary judgment. At a hearing on the motion, the trial judge specifically asked the Scotts' counsel for evidence that supported the Scotts' position:
 "THE COURT: Okay. I'm asking you, what evidence do you have that they [Commonwealth] did anything that is not reflected by the — that would not be adequately covered by their participation in a bona fide escrow arrangement? What evidence do you have that it was not on their part bona fide?
 "MR. WILSON: The contention is that the evidence of the Scotts concerning the transaction — their side of it with Mr. Van Buren takes it out of a bona fide transaction completely and gives responsibility to Commonwealth for it. That's our legal contention in the case.
 "THE COURT: I don't believe that there is any doctrine of respondeat superior or agency or vicarious liability that would impose or that would put the liability of one party to a commercial transaction because of — in a generic sense, had faith that would necessarily impose that on the other party to the transaction. If the transaction is otherwise legitimate on its face, then, therefore, I'm going to grant summary judgment to Commonwealth."
Like the trial judge, we are unable to find any evidence that a conspiracy, and not an ordinary valid business relationship, existed between Van Buren and Commonwealth. The escrow document that was before the trial judge gives Commonwealth no discretion in the disbursement of the funds owed to Van Buren. We find no evidence that Commonwealth knew any particulars of the agreement between Van Buren and the Scotts, whatever they were. There is no evidence that Commonwealth knew that the deed to it of the property was claimed to be a forgery. Answers to interrogatories propounded by the Scotts showed that this was not the first transaction for the purchase of land that had operated through Van Buren's Commonwealth escrow account, *Page 105 
and apparently there had been no other problems. Commonwealth claims it had no reason to know or suspect that any fraud had been committed.
The Scotts argue that a jury could infer that the arrangement between these two defendants was used to hide the fact that the Scotts were deeding their land to Van Buren. We disagree. We find no evidence to support the contention that Commonwealth intended in any way to conspire with Van Buren.
To find otherwise would be to adopt a new rule — a rule to the effect that one person's material relationship with a person accused of fraud makes that first person subject to a claim of conspiracy to commit fraud. This is a step we refuse to take. Viewing all the evidence in the light most favorable to the Scotts, we are unable to find any evidence in support of' their claim against Commonwealth. We do not, of course, make any determination as to any of the other facts of the case, nor do we make any statement as to Van Buren's possible liability. However, we point out that count two of the complaint, alleging conspiracy to commit fraud by Van Buren and Commonwealth, cannot stand against Van Buren alone, because at least two parties are required to support an allegation of conspiracy. The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON and HOUSTON, JJ., concur.